UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Not Present | Not Present |

**Proceedings:**      (IN CHAMBERS) - DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY
ADJUDICATION (Dkt. 43, filed August 17, 2014)

## I.      INTRODUCTION

This action arises from the sexual assault in late 2009 of plaintiff Tara McMahon
("plaintiff" or "McMahon") by Los Angeles Police Department ("LAPD") Officer Luis
Valenzuela, while Valenzuela was on duty with his partner, LAPD Officer James
Nichols. Prior to filing this action, plaintiff presented her administrative claim to the City
of Los Angeles ("the City") on January 17, 2014, pursuant to California Government
Code Section 910, et seq. Compl. ¶ 43. The City rejected plaintiff's administrative claim
on February 24, 2014. Id.

On March 19, 2014, plaintiff filed this action in federal court against Valenzuela,
Nichols, and the City (collectively, "defendants"). The complaint asserts the following
ten claims: (1) assault, (2) sexual battery, and (3) intentional infliction of emotional
distress against Valenzuela and the City; (4) aiding and abetting assault, (5) aiding and
abetting sexual battery, and (6) police negligence against Nichols and the City; (7) false
imprisonment against all three defendants; and (8) violations of the Fourth Amendment
under 42 U.S.C. § 1983, (9) the Eighth Amendment under 42 U.S.C. § 1983, and (10)
civil rights under California Civil Code § 52.1 (the "Bane Act") against Valenzuela and
Nichols.[1] Id. ¶¶ 49-100. In the complaint, plaintiff states that "the threats of Defendants
Valenzuela and Nichols" and "the stonewalling, misrepresentations and directives of [the

---

[1] Plaintiff does not seek to allege a claim for violation of 42 U.S.C. § 1983, or any
other federal claim, against the City.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

City]" dissuaded her from timely filing all of her claims.  Id. ¶ 44.  Plaintiff contends, therefore, that defendants are equitably estopped from asserting a statute of limitations defense as to both the filing of the section 910 claim and the instant lawsuit.  Id. ¶¶ 44-48.

On August 17, 2015, defendants filed the instant motion for summary judgment or, in the alternative, summary adjudication, in conjunction with supporting exhibits and a separate statement of uncontroverted facts.  Dkt. 44.  Defendants' chief argument in the instant motion is that all of plaintiff's claims are barred for failure timely to comply with the California Government Tort Claims Act and other relevant statutes of limitations.  On August 24, 2015, plaintiff filed her opposition, in conjunction with supporting exhibits, a separate statement of uncontroverted facts, and a request for judicial notice.  Dkts. 51-53.[2]  Defendants replied on August 31, 2015, while simultaneously filing joint objections

_____

[2]  Plaintiff requests that the court take judicial notice of the following three documents: (1) a January 3, 2013 Los Angeles Times newspaper article by Joel Rubin and Jack Leonard entitled, "2 LAPD Officers Accused of Forcing Women to Have Sex," attached as exhibit 12 to the Declaration of Scott J. Street; (2) a November 5, 2013 Los Angeles Times newspaper article by Joel Rubin entitled, "LAPD Seeks to Fire Two Officers Over Coerced Sex," attached as exhibit 13 to the Declaration of Scott J. Street; and (3) a June 27, 2013 LAPD Internal Affairs Report, attached as exhibit 7 to the Declaration of Scott J. Street.  Defendants object to the newspaper articles under Federal Rules of Evidence 402 (lacks relevance), 901(a) (lacks authentication), 56(e) (lacks foundation), 802 (inadmissible hearsay), and 805 (inadmissible hearsay within hearsay).  See Defs.' Evid. Objs. Nos. 88-89.  While the Court may take judicial notice of newspaper articles, it can do so only to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true."  Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010) (citing Premier Growth Fund v. Alliance Capital Mgmt., 435 F.3d 396, 401 n.15 (3d Cir. 2006)).  To the extent to which plaintiff requests judicial notice of the facts contained within these articles, the request is **DENIED**.  However, the Court **GRANTS** plaintiff's request to the extent it seeks only to indicate that the content of the newspaper articles was in the public realm at the time of publication and therefore available for plaintiff to read at that time.  Defendants' evidentiary objections are accordingly **DENIED**.  Defendants further object to the Internal Affairs report under Federal Rules of Evidence 402 (lacks relevance), 404 (improper character evidence), 901(a) (lacks authentication), 56(e) (lacks foundation),

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            'O'

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

to documentary evidence plaintiff offered in support of her opposition. Dkt. 71. Having carefully considered the parties' arguments, the Court finds and concludes as follows.[3]

## II.  BACKGROUND

Except where noted, the following facts are undisputed.  In 2009, Officers Luis Valenzuela and James Nichols ("the officers") were officers in LAPD's Hollywood Division.  Pls.'s Separate Statement of Genuine Disputes and Additional Material Facts ("PS") ¶ P3; Defs.' Joint Reply to Pls.'s Separate Statement of Genuine Disputes and Additional Material Facts ("DRS") ¶ P3.  More specifically, the officers were partners in LAPD's undercover narcotics unit. PS ¶ P4; DRS ¶ P4.  On July 8, 2009, Plaintiff Tara McMahon was arrested for possession of methamphetamine.  Defs.' Statement of Uncontroverted Facts ("DS") ¶ 1; PS ¶ 1.  Following her arrest, McMahon was transported to the Van Nuys County Jail by Officers Valenzuela and Nichols. DS ¶ 2; PS ¶ 2.  At the time, the officers told McMahon they would put her "on the payroll" if she helped them. PS ¶ P6; DRS ¶ P6.  Valenzuela gave McMahon his cell phone number and told her to call him if she needed anything. PS ¶ P7; DRS ¶ P7.  McMahon was then transferred to the Criminal Courts Building ("CCB") where she was eventually released on or about July 11, 2009. DS ¶ 3; PS ¶ 3.  After her release from CCB, McMahon was

---

802 (inadmissible hearsay), and 805 (inadmissible hearsay within hearsay).  See Defs.'s Evid. Objs. No. 84.  Generally, "[f]acts are indisputable, and thus subject to judicial notice, only if they are either 'generally known' under Rule 201(b)(1) or 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned' under Rule 201(b)(2)."  United States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003) (citation omitted).  Plaintiff's request that the Court take judicial notice of the Internal Affairs report, presumably for the truth of the statements contained therein, is **DENIED** because the statements and findings contained within the report do not constitute matters that are "not subject to reasonable dispute."  Fed. R. Evid. 201.

[3] Portions of the briefing and record in this matter were filed under seal.  This redacted version of the Court's order omits references to information included in a version produced under seal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

approached by officers Valenzuela and Nichols, who gave her food and beverage, and then dropped her off in Hollywood.  DS ¶ 4; PS ¶ 4.

Sometime between August 9, 2009, and November 4, 2009, McMahon was approached by Officers Valenzuela and Nichols while she was walking her dog in Hollywood.  DS ¶ 5; PS ¶ 5.  The Officers were traveling in a gray Volkswagon Jetta. DS ¶ 5; PS ¶ 5.  Officer Valenzuela told McMahon to get into the car, and McMahon complied, getting into the car's backseat.  DS ¶ 6; PS ¶ 6.  Officer Valenzuela drove for a short period of time and then parked the car.  DS ¶ 7; PS ¶ 7.  Valenzuela then told McMahon that he was going to get into the backseat.  DS ¶ 8; PS ¶ 8.  After getting into the back seat, Valenzuela took McMahon's dog and gave it to Nichols.  DS ¶ 9; PS ¶ 9. According to McMahon, Officer Valenzuela then proceeded to sexually assault her.  DS ¶ 10; PS ¶ 10.  During this assault, Valenzuela forced McMahon to orally copulate him in the backseat.  Id.  Nichols served as the "lookout" during the assault and did nothing to stop the sexual assault .  PS ¶¶ P51-P52; DRS ¶¶ P51-P52.  The first thing plaintiff can recall Officer Valenzuela saying after the assault was, "That – that wasn't so bad, was it." DS ¶ 11; PS ¶ 11.

Officer Nichols was seated in the front seat during the entire sexual assault and did not say anything to McMahon during the assault.  DS ¶ 13; PS ¶ 13.  Furthermore, at no point in time after the sexual assault did McMahon ever see or speak to Officer Nichols again.  DS ¶ 15; PS ¶ 15.  After the sexual assault, Valenzuela exchanged numerous text messages with McMahon in late 2009 and 2010.  PS ¶ P55; DRS ¶ P55.  Valenzuela and McMahon also spoke on the phone during this period.  PS ¶ P56; DRS ¶ P56.  During their various communications, it is undisputed that Valenzuela told McMahon, inter alia, not to report the assault because he had a family.  PS ¶ P58; DRS ¶ P58.  It is further undisputed that Valenzuela stated that he and Nichols would put McMahon "on the payroll" if she stayed quiet about the assault and would also buy her a ticket to Las Vegas if she would go there and never return to Los Angeles.  PS ¶¶ P59, P61; DRS ¶¶ P59, P61.  Plaintiff avers, but defendants dispute, that she was terrified that the officers would retaliate against her if she reported the sexual assault because Valenzuela told her through

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

their communications that she would be in danger if she said anything about the incident. See PS ¶¶ P57, P65; Declaration of Tara McMahon ("McMahon Decl.") ¶ 19.[4]

The first time McMahon actually saw Officer Valenzuela after the assault was in 2010 when she was arrested for public intoxication and was walking into LAPD's Wilcox Station. DS ¶ 17; PS ¶ 17; PS ¶ P63; DS ¶ 63. At that time, she observed Officer Valenzuela walking into the station, and called out to him. DS ¶ 18; PS ¶ 18. In response, Officer Valenzuela put his finger up to his lips, as if to gesture that McMahon should be quiet. DS ¶ 19; PS ¶ 19. McMahon did not see him again on that day or that evening. DS ¶ 20; PS ¶ 20.

On January 20, 2011, McMahon was again arrested and taken to LAPD's Hollywood Station. PS ¶ P78; DRS ¶ P78. On this date, McMahon reported the 2009 sexual assault to LAPD for the first time. DS ¶ 21; PS ¶ 21. McMahon insists, though defendants dispute, that she did not report the sexual assault to LAPD before this date because she believed that Officers Valenzuela and Nichols would retaliate against her on account of previous threatening statements they allegedly made towards her. PS ¶¶ P79-P80. As a result of McMahon's reporting the incident to LAPD, a number of LAPD sergeants conducted a videotaped interview with McMahon on January 20, 2011. DS ¶ 22; PS ¶ 22. McMahon did not identify Officers Valenzuela and Nichols by name during this interview. PS ¶ P81; DRS ¶ P81. During the interview, the sergeants told McMahon that [*** **REDACTED** ***]. DS ¶ 23.[5] McMahon was asked [*** **REDACTED** ***]. DS ¶ 24; PS ¶ 24. In response, McMahon [*** **REDACTED** ***]. Street Decl., Ex. 16 at 56:21-57:1; see DS ¶ 25; PS ¶ 25. It is undisputed that during the interview [*** **REDACTED** ***]. DS ¶ 27; PS ¶ 27. Both parties have provided the Court with

---

[4] Defendants argue that McMahon's declaration, filed in conjunction with her opposition to the instant motion, is a "sham" affidavit and should not be considered by the Court. For reasons explained infra, the Court disagrees, and **OVERRULES** defendants' objections to plaintiff's recently submitted declaration. See infra, Section IV.A.1.

[5] Plaintiff disputes this fact, but proffers evidence that does not actually render the fact disputed. PS ¶ 23. Accordingly, this fact is not subject to genuine factual dispute.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**         'O'

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|----------|--------------------------|------|--------------------|
| Title    | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

complete transcripts of the January 20, 2011 interview.  See Declaration of Charles Phan ("Phan Decl."), Ex. D; Declaration of Scott J. Street ("Street Decl."), Ex. 16. Accordingly, neither party disputes that [*** **REDACTED** ***].  PS ¶ P84 (citing Street Decl., Ex. 16 (January 20, 2011 Recorded Interview Transcript), 7:8-11:21, 40:4-41:13, 55:5-57:10; 64:14-66:20, 67:24-72:6, 77:15-78:24).  However, the parties dispute [*** **REDACTED** ***].  See, e.g., DS ¶¶ 26, 29-30; PS ¶¶ 26, 29-30; DRS ¶ P84 (arguing that from the interview transcript [*** **REDACTED** ***]).

Within a few days of her January 20, 2011 interview with the sergeants, McMahon claims that she saw Officer Valenzuela at a hostel in Hollywood twice on the same day. DS ¶¶ 31, 37; PS ¶¶ 31, 37.  This was McMahon's first encounter with Valenzuela after seeing him at LAPD's Wilcox Station, when he gestured that she should keep quiet.  DS ¶ 32; PS ¶ 32.  During the first encounter at the hostel, she saw him typing on a computer, but does not recall having any conversations with him.  DS ¶ 33; PS ¶ 33.  During the second encounter at the hostel, she saw him drinking wine while she made dinner at the hostel, and they had a conversation, during which Officer Valenzuela made no threats. DS ¶ 34.[6]  The next time McMahon saw Officer Valenzuela was the following morning, when she saw him walking away from the parking lot of the hostel.  DS ¶ 35; PS ¶ 35. They did not speak to each other during that instance.  DS ¶ 36; PS ¶ 36.  This was the last encounter between Officer Valenzuela and McMahon.  DS ¶ 37; PS ¶ 37.

In February 2011, McMahon moved to Las Vegas.  DS ¶ 38; PS ¶ 38.  Her first contact with anyone from the LAPD thereafter was her communication with Detective Christine Frus, who works in LAPD's Internal Affairs division and was assigned in late 2011 to investigate McMahon's sexual assault allegations.  DS ¶¶ 39-40; PS ¶¶ 39-40. Detective Frus had several telephonic conversations with McMahon, including five that predated May 24, 2012.  DS ¶ 41; PS ¶ 41.  Citing to testimony from McMahon's deposition, defendants aver that during these calls, Detective Frus called to check in with McMahon and inquire about how she was doing.  DS ¶ 42 (citing Phan Decl., Ex. A

---

[6] Plaintiff disputes this fact, but proffers evidence that does not actually render the fact disputed.  PS ¶ 34.  That is, plaintiff does not dispute that *during this encounter*, Officer Valenzuela made no threats.  Accordingly, this fact is not subject to genuine factual dispute.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

(Deposition of Tara McMahon), at 104:20-106:2). Plaintiff disputes defendants'
characterization of these phone calls, citing primarily to plaintiff's more recent
declaration, submitted in conjunction with plaintiff's opposition to the instant motion. PS
¶ 42 (citing McMahon Decl., ¶¶ 31-35).

On May 24, 2012, Detective Frus conducted an audiotaped telephonic interview
with McMahon. DS ¶ 43; PS ¶ 43. It appears that the purpose of this telephonic
interview was to set-up an in-person meeting between Detective Frus and McMahon. DS
¶ 44; PS ¶ 44. Defendants have submitted a copy of the audiotaped telephonic interview,
as well as a certified transcript of the audiotaped interview. See Declaration of Christine
Frus ("Frus Decl."), Ex. A (Audiotaped Interview of May 24, 2012); Phan Decl., Ex. E
(Certified Transcript of Audiotaped Interview of May 24, 2012). Defendants aver that
Detective Frus did not threaten McMahon or tell her not to hire a lawyer during this
audiotaped telephonic interview, and although plaintiff disputes this fact, the evidence
she offers does not generate any genuine dispute regarding defendants' proffered fact.
See DS ¶ 45; PS ¶ 45.

On May 29, 2012, Detective Frus and her colleague conducted an audiotaped in-
person interview with McMahon in Las Vegas, Nevada. DS ¶ 46; PS ¶ 46. As with
McMahon's January 20, 2011 interview with the LAPD sergeants, both parties have
produced transcripts of Detective Frus's May 29, 2012 in-person interview. See Phan
Decl., Ex. F; Street Decl., Ex. 17. Although plaintiff disputes some of defendants'
proffered facts regarding the content of the interview, see, e.g., PS ¶ 48, plaintiff does not
proffer any evidence that creates a genuine dispute as to the words that were exchanged
during the interview itself.

In either 2011 or 2012, plaintiff first told her mother, Kate McMahon, about the
subject assault. DS ¶ 49; PS ¶ 49. Since that time, plaintiff has had five to ten
conversations with her mother about the incident. DS ¶ 50; PS ¶ 50. During these
conversations, according to plaintiff's deposition testimony, Kate McMahon told
plaintiff, "You need an attorney," and, "Nothing will probably happen if you don't have
[an attorney]." Phan Decl., Ex. A (Deposition of Tara McMahon), at 11:5-21; see also
DS ¶ 51. However, the parties dispute the relevance of these conversations between

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

plaintiff and her mother, as well as the effect such conversations had on plaintiff. <u>See</u> Mot. Summ. J. at 17; Opp'n at 18.

It is undisputed that between May 29, 2012, and September 2013, plaintiff met Detective Frus in Las Vegas on at least one occasion, and also exchanged numerous phone calls, e-mails, and text messages with Detective Frus. PS ¶¶ P102-103; DRS ¶¶ P102-103. However, the parties vigorously dispute the content of the exchanges that took place between McMahon and Detective Frus during this period. <u>See</u> PS ¶¶ P104-107. In a declaration submitted in conjunction with plaintiff's opposition, plaintiff insists that she asked Detective Frus during many of these conversations whether she should get a lawyer, and that Detective Frus always said, "No." McMahon Decl. ¶ 32. Specifically, plaintiff avers that Frus said that "lawyers won't look out for your interests" and "only want money." <u>Id.</u> According to McMahon, Detective Frus also said that she had McMahon's best interests in mind and that, if McMahon was patient, the police would help her by, for example, getting her assistance for crime victims. <u>Id.</u> ¶ 33; PS ¶ P110. McMahon also states that Detective Frus told her not to talk to anyone about the sexual assault, as it could jeopardize the police's investigation of the officers. McMahon Decl. ¶ 33. McMahon insists that Detective Frus never specified that she did not need a "criminal lawyer"; accordingly, McMahon states that she believed Frus was telling her not to hire any lawyer at all. McMahon Decl. ¶ 34; PS ¶¶ P111-P112. Defendants dispute these facts, citing, <u>inter alia</u>, to both the deposition and declaration of Detective Frus.

In September 2013, McMahon further states—and defendants do not expressly dispute—that she came across a <u>Los Angeles Times</u> newspaper article explaining that the LAPD was investigating multiple allegations of sexual assault by Officers Valenzuela and Nichols, and that both officers had been suspended. PS ¶¶ P127-P128. McMahon asserts that reading the article led her to believe that the LAPD had been discouraging her from retaining a lawyer in order to avoid a lawsuit. PS ¶ P128; McMahon Decl. ¶¶ 38-39. Shortly after reading the article, therefore, McMahon states that she retained her current attorneys. PS ¶ P130.

On January 17, 2014, McMahon filed a Tort Claim with the City pursuant to Government Code § 910. DS ¶ 52; PS ¶ 52. On March 19, 2014, McMahon filed her

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

complaint in the instant action, alleging claims for assault, sexual battery, intentional infliction of emotional distress, aiding and abetting assault and sexual battery, police negligence, false imprisonment, violation of California Civil Code § 52.1 (the "Bane Act"), and violations of the Fourth and Fourteenth Amendment under 42 U.S.C. § 1983. DS ¶ 53; PS ¶ 53.

Plaintiff proffers the following additional facts.

In the summer of 2009, before the alleged sexual assault, Officer Valenzuela approached McMahon while she was at a Carl's Jr. Restaurant in Los Angeles, handcuffed her, held a gun to her head, and yelled at her to give him the "dope." PS ¶¶ P20-P22. Valenzuela kept the gun pointed at McMahon until she retrieved a small amount of marijuana in her possession. Id. ¶¶ P22-P23. After McMahon retrieved the marijuana, Valenzuela took her outside where Nichols was waiting in a gray Volkswagon Jetta. Id. ¶ P24. The officers threatened McMahon, explaining that she could be charged with transporting drugs and could go to jail for a lengthy amount of time. Id. ¶ P26. According to McMahon, she feared that Valenzuela and Nichols would report her to authorities and that she would be prosecuted. Id. ¶ P27.

In the fall of 2009, during the months following the sexual assault, McMahon avers that she began drinking heavily, became withdrawn and depressed, and experienced anxiety and panic attacks. Id. ¶ P68. She further states that she had to be hospitalized several times in the fall of 2009 because of severe emotional distress and psychological damage suffered as a result of the sexual assault, which contributed to development of post-traumatic stress disorder and, further, made it difficult for her to function or understand her rights. Id. ¶¶ P69-P72. For example, on November 7, 2009, McMahon was admitted to Olive View Medical Center and held against her will in a psychiatric ward for two weeks. Id. ¶ P71. Around this same time, McMahon states that she cried incessantly, stopped taking care of her appearance, and experienced mood swings, among other symptoms. Id. ¶¶ P75-P77. Years later, shortly after her January 20, 2011 interview with the LAPD sergeants, McMahon states that she suffered a psychotic breakdown, was sent to UCLA's Harbor Medical Center, id. ¶ P88, and later was held against her will in a psychiatric facility, id. PS ¶ P90.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

In 2012 or 2013, Detective Frus left Internal Affairs ("IA") and the IA investigation was reassigned to Sergeant Gregory Bruce. PS ¶ P114; DRS ¶ P114. Bruce conducted an investigation of McMahon's allegations, as well as similar allegations regarding Valenzuela and Nichols which had been made by at least three other women. See ¶¶ P115-P122. Sergeant Bruce prepared and shared an Internal Affairs report with his superiors detailing the sexual assault allegations made against Valenzuela and Nichols by the four women. Id. ¶ P123. Plaintiff avers that in October 2013, Officer Nichols was relieved of duty by the LAPD because of the sexual assault allegations made against him and Valenzuela, which included allegations made by plaintiff McMahon. Id. ¶¶ P136-P137. As of August 24, 2015, Officer Valenzuela is suspended from duty but remains employed by the LAPD. Id. ¶¶ P135.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

of law.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

## IV.  DISCUSSION

### A.  Defendants' Evidentiary Objections

Plaintiff proffers three declarations in support of her opposition to defendants' motion.  Defendants filed objections to portions of each declaration, as well as the exhibits attached thereto.  Dkt. 71-1.  Both parties also object on several grounds, including relevance, to each other's proffered facts.  To the extent that the Court relies on either party's proffered facts, it overrules the parties' blanket relevance objections.  The Court addresses the parties' other evidentiary objections only to the extent that the Court relies on the corresponding evidence.  At times, the parties argue that some of the "undisputed" facts included herein are disputed without identifying any material facts that raise a genuine issue.  The Court has reviewed such blanket objections and finds them to lack merit.  A party must establish a genuine dispute of material fact with more than a conclusory objection or denial.  "Rule 56(e) . . . requires the nonmoving party to . . . designate specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324 (internal quotation marks and citations omitted).

#### 1.  Declaration of Tara McMahon

In their reply brief and accompanying evidentiary objections, defendants argue that plaintiff Tara McMahon's declaration, submitted in conjunction with her opposition to the instant motion, is a "sham" provided for the purpose of improperly manufacturing a genuine issue of material fact.  Reply at 4; see Defs.' Evid. Objs. Nos. 29, 33, 35-37, 41, 48-49.  Specifically, defendant objects, inter alia, to the following underlined portions of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

plaintiff's declaration, much of it related to McMahon's interactions with Officer
Valenzuela and LAPD personnel in the years following the alleged assault, on the
grounds that these statements "contradict[] her prior sworn deposition testimony," reply
at 7, and therefore must be excluded as "sham" testimony:[7]

> 19.  I exchanged numerous text messages and had at least one
> phone call with Valenzuela after he assaulted me.  He told me
> not to tell anybody about the incident.  He said I would be in
> danger if I said anything.  He also told me not to say anything
> because he had a family.

> 21.  I saw Valenzuela in 2010, at the LAPD's Wilcox Station.  I
> called out to him.  Valenzuela saw me but held his fingers to his
> lips, as if to say, "keep quiet."  I understood that putting his
> finger to his lips, and Valenzuela's other statements, to be
> threats that Valenzuela and Nichols would retaliate against me
> if I told anybody about the assault.

> 23.  I was embarrassed, scared and emotionally distraught after
> the sexual assault.  I began drinking alcohol heavily.  I would
> cry non-stop for hours.  I became depressed and would also
> experience intense anxiety and panic attacks.  It was so bad that
> I was held at a psychiatric facility, Olive View Medical Center,
> against my will for 13 days in November 2009.

> 26.  The LAPD detectives who interviewed me on January 20,
> 2011 told me that I did not need a lawyer.  I asked the
> detectives several times whether I needed a lawyer.  They
> repeatedly said no, I did not need a lawyer.

---

[7]  Defendants also object to portions of McMahon's declaration in which she
contests Valenzuela's assertions, as offered in his deposition testimony, regarding his text
messaging and phone calls with McMahon.  See McMahon Decl. ¶¶ 42-43.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

31.  I met Detective Frus in Las Vegas on May 29, 2012. Detective Frus took me to a police station and asked me about my encounters with Officers Valenzuela and Nichols.  Before the interview, I asked Detective Frus if I should get my own lawyer.  She said no.  I told Detective Frus that I was scared of the officers.  She said that I "don't have to be afraid.  We will protect you."

32.  I exchanged numerous text messages, e-mails and phone calls with Detective Frus after that first meeting, between May 2012 and September 2013.  I also met her once in person in Las Vegas.  In many of those conversations, I asked Detective Frus if I should get a lawyer.  She always said no.  She said that "lawyers won't look out for your interests" and that "lawyers only want money."

35.  I believed Detective Frus'[s] statements that the police would protect me.  I believed her statements that a lawyer would not look out for my best interests.  Based on Detective Frus'[s] statements, I believed that contacting a lawyer would jeopardize the police's investigation of the officers.  I wanted the officers to go to jail for what they did to me.  That is why I did not contact a lawyer or file a claim.  I relied on Detective Frus'[s] statements to me from 2012 until September 2013.

        In maintaining that McMahon's declaration is a "sham," defendants cite to the Ninth Circuit's decision in Kennedy v. Allied Mut. Ins. Co., in which the court explained that "[t]he general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."  952 F.2d 262, 266 (9th Cir. 1991).  The court in Kennedy further explained that "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."   Id. at 266 (citations omitted).  The court noted, however, that the federal circuits "have urged caution in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|----------|-------------------------|------|--------------------|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

applying [the 'sham' affidavit] rule," and that the rule "does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony. Rather . . . the district court must make a factual determination that the contradiction was actually a 'sham.'" Id. at 266-67.

Here, defendants maintain that McMahon's declaration "contradicts" her prior testimony regarding Officer Valenzuela's alleged threats and Detective Frus's alleged statements in the years following the incident. See Reply at 4-5, 7-8. The Court disagrees. The fact that McMahon "at no point in time [during her deposition] indicated that any threats were made to her by Officer Valenzuela" does not render more recent statements in her declaration regarding such alleged threats "contradictory" or a "sham," as defendants contend. Id. at 4. When asked during her January 2011 interview **[*** REDACTED ***]**. Street Decl., Ex. 16 (January 20, 2011 Recorded Interview Transcript), 57:2-10. This prior testimony does not *contradict* anything in McMahon's declaration, in which she states that Valenzuela "told [her] not to tell anybody about the incident" and that she "would be in danger if [she] said anything." McMahon Decl. ¶ 19. The very limited portion of McMahon's May 2015 deposition to which defendants cite in their reply is similarly unavailing. See Reply at 4. During her deposition, when asked "what would be spoken" during a certain subset of conversations with Valenzuela, McMahon simply responded, "Asking – – asking where I was, and so that they could talk to me or something." Phan Decl., Ex. A (Deposition of Tara McMahon) at 163:1-9. McMahon did not, however, represent in her answer—or elsewhere in the portions of the deposition provided to the Court—that her conversations with Valenzuela were *limited only* to discussing her location "so that [the officers] could talk to [her] or something." Thus, defendants' reliance upon this statement in McMahon's deposition does not render any portion of her declaration a "sham."

Similarly, defendants' contention that McMahon "at no point mentioned" in her prior testimony "that Detective Frus told her not to not retain legal counsel for a civil action or not to speak to anyone as doing so would jeopardize LAPD's investigation" does not render her recent statements contradictory or a "sham." Reply at 7. Rather, the statements in McMahon's declaration are more appropriately characterized as *supplementary* to her prior interview and deposition testimony. In the Ninth Circuit, "the non-moving party is not precluded from elaborating upon, explaining or clarifying prior

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

testimony elicited by opposing counsel on deposition; minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." Messick v. Horizon Indus., Inc., 62 F.3d 1227, 1231 (9th Cir. 1995). To the extent that there exists any disparity between McMahon's prior testimony and her recent declaration, such disparity is not "so extreme that the court must regard the differences between the two as contradiction." Yeager v. Bowlin, 693 F.3d 1076, 1080-81 (9th Cir. 2012) (affirming lower court's decision to strike plaintiff's declaration because plaintiff "remember[ed] almost nothing about the events central to the case during his deposition, but suddenly recall[ed] those same events with perfect clarity in his declaration in opposition to summary judgment without any credible explanation as to how his recollection was refreshed"). With respect to the instant motion, "the sham affidavit rule should be applied with caution because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment." Id. at 1080. Accordingly, the court declines to exclude these portions of McMahon's declaration under the "sham affidavit" rule or on the related ground that the declaration contradicts prior testimony. See Fed. R. Evid. 608.

Defendants further object to portions of McMahon's declaration on the grounds that the statements contained therein lack relevance, are overly speculative, offer improper opinion testimony, or constitute inadmissible hearsay. Defendants' hearsay objections are **OVERRULED** because the numerous out-of-court statements in McMahon's declaration are offered to demonstrate their effect on McMahon, and not to prove the truth of the matters asserted therein. Montoya v. Orange Cnty. Sheriff's Dep't, 987 F.Supp.2d 981, 993 (C.D. Cal. 2013) ("Statements do not qualify as hearsay when they 'are not offered for the truth of the matter asserted, but [a]re admitted to establish that the statement was made or to demonstrate the effect the statement had on the hearer.'") (quoting U.S. v. Kirk, 844 F.2d 660, 663 (9th Cir.1988)). For example, Detective Frus's alleged statements that "lawyers only want money" and "won't look out for [McMahon's] interests" are clearly not offered by McMahon for the truth of the matters asserted, but rather to support her contentions regarding the reason for her delay in filing both her Tort Claim and the instant lawsuit. The remainder of defendants' objections are similarly **OVERRULED**, as none of McMahon's statements are overly speculative or improper opinion testimony.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     '**O**'

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

## 2.     Declaration of Roberta L. Falke, Ph.D.

Defendants also object to paragraphs eight through fourteen of the declaration of Roberta L. Falke, Ph. D., an expert retained by plaintiff who proffers opinions in her declaration regarding the following topics: (1) McMahon's emotional and psychological state prior to the sexual assault committed by Officers Valenzuela and Nichols; (2) the effect that the sexual assault had on McMahon; and (3) the effect that the officers' alleged threats and actions had on McMahon's mental state.  Defendants first object to Falke's proffered testimony on the grounds that she lacks the requisite personal knowledge to offer such testimony (under Fed. R. Evid. 602), and second on the grounds that the testimony itself lacks relevance (under Fed. R. Evid. 402), is speculative (under Fed. R. Evid. 701), and is improper expert opinion testimony not stated to a degree of medical certainty (under Fed. R. Evid. 703).  <u>See</u> Defs.' Evid. Object. Nos. 155-162.  For reasons explained below, defendants' objections are **OVERRULED**.

Under Rule 703, an "expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."  Fed. R. Evid. 703.  Dr. Falke is a clinical psychologist licensed to practice in the state of California, with experience and expertise in the assessment and treatment of post-traumatic stress disorder.  Declaration of Roberta Falke ("Falke Decl.") ¶ 1.  Before developing her opinions, Dr. Falke states that she personally had several phone calls with McMahon, conducted a lengthy and detailed in-person interview with her, and reviewed all medical records that McMahon produced in this case.  <u>Id.</u> ¶¶ 6-7.  Among these records are McMahon's medical records from Cedars Sinai Medical Center (Street Decl., Ex. 20), Northridge Hospital Medical Center (Street Decl., Ex. 21), Providence St. Joseph Medical Center (Street Decl., Ex. 22); UCLA – Olive View Medical Center (Street Decl., Ex. 23); UCLA – Harbor Medical Center (Street Decl., Ex. 24); and Exodus Recovery Medical Center (Street Decl., Ex. 25).  Although defendants lodge objections to the admissibility of these medical records, <u>see</u> Defs.' Evid. Object. Nos. 150-154, under Rule 703, the evidence upon which an expert relies in forming an opinion "need not be admissible for the opinion to be admitted," so long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject."  Fed. R. Evid. 703;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

United v. Gonzales, 307 F.3d 906, 910 (9th Cir. 2002).[8]  The Court concludes that plaintiff's voluminous medical records, which include details of the mental breakdowns she purports to have suffered in the past, are certainly the type of information upon which an expert like Dr. Falke would typically rely in assessing an individual's psychological state.[9]  Furthermore, much of Dr. Falke's opinion is rooted in her own personal observation, knowledge, and assessment of McMahon through interviews, Fed. R. Evid. 602, and is not overly speculative under Rule 701, which applies to opinion testimony by lay witnesses.  Lastly, the Court finds that the evidence of plaintiff's mental state following the sexual assault is relevant, as it has some "tendency" to make a "fact of consequence in determining the action"—for example, the reasonableness of McMahon's fear of reporting the incident, given her purported condition—"more or less probable than it would be without the evidence." Fed. R. Evid. 401; see also Fed. R. Evid. 402.  Accordingly, defendants' objections numbered 155 through 162 are **OVERRULED**.

### 3.     Declaration of Attorney Scott J. Street

Citing to various Federal Rules of Evidence, defendants lodge hundreds of blanket objections (without any supporting argument) to the many exhibits that plaintiff has included in her opposition as attachments to the Declaration of Scott J. Street.  Among

---

[8] However, Rule 703 goes on to state that "if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."  Fed. R. Evid. 703.

[9] The Court does not, however, rule on defendants' objections to the medical records themselves, as the Court does not rely upon these records in denying the instant motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

these exhibits are excerpts from various depositions taken in this case,[10] as well as plaintiff Tara McMahon's medical records.  To the extent that defendants object to any evidence not discussed in this order, these objections are **OVERRULED AS MOOT** because the Court does not rely on the objected-to evidence in concluding that the record raises numerous genuine disputes of material fact.  If necessary, defendants may renew any and all such evidentiary objections at a later date in this proceeding.

## B.     Plaintiff's California State Law Claims

### 1.     Statute of Limitations

"As part of the California Tort Claims Act, Government Code section 900 et seq. establishes certain conditions precedent to the filing of a lawsuit against a public entity," like the City of Los Angeles.  State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1237 (2004).  Under the Tort Claims Act, McMahon "must timely file a claim for money or damages with the public entity" before filing a suit like the instant action against the City, Valenzuela, and Nichols.  Id. (citing Cal. Govt. Code § 911.2).  Generally, "[t]he failure to do so bars the plaintiff from bringing suit against that entity."  Id. (citing Cal. Govt. Code § 945.4).[11]  Crucially, a claim for money or damages arising from death or injury

---

[10] See Defs.' Evid. Object. Nos. 52-58 (regarding the deposition transcript of Gregory Bruce); id. Nos. 59-61 (regarding the deposition transcript of Christine Frus); id. Nos. 62-64 (regarding the deposition transcript of Kate McMahon); id. Nos. 65-81 (regarding the deposition transcript of Tara McMahon); id. No. 82 (regarding the deposition transcript of James Nichols); id. No. 83 (regarding the deposition transcript of Luis Valenzuela).

[11] As defendants note, Motion Summ. J. at 7-8, under California Government Code section 950.2, "a cause of action against a public employee or former public employee [such as Officers Valenzuela and Nichols] for injury resulting from an act or omission in the scope of his employment as a public employee is barred if an action against the employing public entity [i.e., the City of Los Angeles] for such injury is [or would be] barred" due to failure to comply with the Tort Claims Act.  Cal. Govt. Code § 950.2. Thus, although plaintiff's Bane Act claim (her tenth claim in the instant litigation) is not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|----------|--------------------------|------|---------------------|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

must be presented to the public entity "*not later than six months* after the accrual of the cause of action." Cal. Govt. Code § 911.2 (emphasis added). However, when such a claim is not presented within six months of the accrual, one can still apply to the public entity for leave to present a late claim within a reasonable amount of time *not to exceed one year* after the accrual of the cause of action. Id. § 911.4(a),(b). Thus, under these statutes, one who presents neither (1) a timely claim for money or damages to a public entity within six months of the accrual date, nor (2) an application for leave to present a late claim within one year of the accrual date, is effectively barred from filing a lawsuit against that entity. See Bodde, 32 Cal. 4th at 1239.

McMahon did not present her claim to the City pursuant to California Government Code Section 910, et seq. until January 17, 2014, Compl. ¶ 43, well beyond both the six-month cutoff for filing such a claim and the one-year cutoff for seeking leave to present a late claim. The City rejected plaintiff's claim on February 24, 2014. Id. Therefore, unless McMahon can demonstrate on equitable grounds that an extension is warranted, or that defendants are estopped from availing themselves of a statute of limitations defense, then McMahon's state law claims for (1) assault, (2) sexual battery, (3) intentional infliction of emotional distress, (4) aiding and abetting assault, (5) aiding and abetting sexual battery, (6) police negligence, (7) false imprisonment, and (8) violations of the Bane Act are barred as untimely. As is relevant here, there are "two doctrines which may apply to extend the limitations period or preclude a defendant from asserting a statute of limitations defense—equitable tolling and equitable estoppel." Lukovsky v. City & Cnty. of San Francisco, 535 F.3d 1044, 1051 (9th Cir. 2008).

--------

brought against the City and is the only state law claim for which the City is not named as a defendant, such a claim against Officers Valenzuela and Nichols is barred as untimely if the claim *would have been* barred had plaintiff also named the City as defendant. Thus, the foregoing analysis regarding timeliness, equitable tolling, and equitable estoppel applies equally to plaintiff's Bane Act claim under California Civil Code section 52.1 (in which the city is *not* named as a defendant), and all other state law claims (in which the City *is* named as a defendant).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

## 2.   The Doctrines of Equitable Tolling and Equitable Estoppel

Although the doctrines of equitable tolling and equitable estoppel are sometimes conflated with one another, "the better reasoning states that equitable tolling applies when the plaintiff is unaware of his cause of action, while equitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit." Estate of Amaro v. City of Oakland, 653 F.3d 808, 814 (9th Cir. 2011) (citing Stitt v. Williams, 919 F.2d 516, 522 (9th Cir. 1990)). The task for the Court at this stage in the proceeding is to discern whether a jury could find (1) that the statute of limitations was equitably tolled until at least one year before McMahon's January 2014 filing of a Tort Claim; or (2) that defendants are equitably estopped from asserting a statute of limitations defense on account of the actions of Officer Valenzuela, Officer Nichols, and other City personnel. To the extent to which there are genuine disputes regarding material facts that would bear on the jury's inquiry as to these issues, this simply underscores the appropriateness of denying summary judgment, so as to allow the finder of fact to resolve such factual disputes.

### a.   Equitable Tolling

Broadly speaking, the doctrine of equitable tolling applies under California law "'[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one.'" Elkins v. Derby, 12 Cal. 3d 410, 414 (1974) (quoting Myers v. Cnty. of Orange, 6 Cal. App. 3d 626, 634 (1970)). It may apply, for example, "where one action stands to lessen the harm that is the subject of a potential second action; where administrative remedies must be exhausted before a second action can proceed; or where a first action, embarked upon in good faith, is found to be defective for some reason." McDonald v. Antelope Valley Cmty. Coll. Dist., 45 Cal. 4th 88, 100 (2008) (citing Collier v. City of Pasadena, 142 Cal. App. 3d 917, 923 (1983)). In such circumstances, "[t]olling eases the pressure on parties 'concurrently to seek redress in two separate forums with the attendant danger of conflicting decisions on the same issue.'" Id. (quoting Olson v. County of Sacramento, 38 Cal. App. 3d 958, 965 (1974)). By "alleviating the fear of claim forfeiture, [equitable tolling] affords grievants the opportunity to pursue informal remedies . . . without compromising defendants' significant 'interest in being promptly apprised of claims against them in order that they

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|----------|-------------------------|------|---------------------|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

may gather and preserve evidence' because that notice interest is satisfied by the filing of the first proceeding that gives rise to tolling." Id. (quoting Elkins,12 Cal. 3d at 417-18) (citations omitted).

The purpose of California's equitable tolling doctrine "is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1137 (9th Cir. 2001) (en banc) (quoting Addison v. State, 21 Cal. 3d 313, 316 (1978)) (internal quotation marks omitted). The party seeking to invoke equitable tolling to avoid a limitations bar bears the burden of proving the applicability of the doctrine. See In re Marriage of Zimmerman, 183 Cal. App. 4th 900, 912 (2010). Therefore, where, as here, "the action appears barred by the statute of limitations" on the face of the complaint, "plaintiff has an obligation to anticipate the defense and plead facts to negative the bar." Aubry v. Goldhor, 201 Cal. App. 3d 399, 407 (Ct. App. 1988) (citations omitted).

In the instant case, plaintiff has not argued that equitable tolling applies in the traditional sense—i.e., because as "an injured person," she had "several legal remedies and, reasonably and in good faith, [timely] pursue[d] one" legal remedy but not another remedy. McDonald, 45 Cal. 4th at 100 (citing Elkins, 12 Cal. 3d at 414); see also id. ("Tolling eases the pressure on parties 'concurrently to seek redress in *two separate forums* with the attendant danger of conflicting decisions on the same issue'" (emphasis added) (citing Olson, 38 Cal. App. 3d at 965)). Rather, in opposition to the instant motion, plaintiff argues that her claims may be "saved by the doctrine of equitable tolling" because the severe mental suffering, psychotic breaks, post-traumatic stress, panic attacks, and anxiety she suffered in the years following the sexual assault impaired her ability "to function or understand her rights" and therefore contributed to her untimely filing. Opp'n at 22-23 (citing Falke Decl. ¶¶ 11, 13). Accordingly, plaintiff avers that there are triable issues of fact with respect to her post-assault mental state, such that a jury should ultimately decide whether equitable tolling applies. Id. at 23. In advancing this argument, plaintiff cites almost exclusively to the Ninth Circuit's decision in Stoll v. Runyon, in which the court states that "[e]quitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." 165 F.3d 1238, 1242 (9th Cir. 1999), as amended

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

(Mar. 22, 1999) (citing <u>Alvarez–Machain v. United States</u>, 107 F.3d 696, 700 (9th Cir. 1996)).  In <u>Stoll</u>, the Ninth Circuit found that equitable tolling applied to an untimely Title VII claim where the injured party had become "severely psychiatrically impaired" as a result of sexual harassment, rape, and abuse by supervisors and coworkers.  <u>Id.</u> at 1243.  <u>Stoll</u>, however, involved an untimely federal claim and does not apply California law regarding equitable tolling.  As defendants note, reply at 10-11, under California law, the "judicially created equitable tolling rule . . . require[s] a showing of three elements: 'timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff.'"  <u>McDonald</u>, 45 Cal. 4th at 102 (citing <u>Addison</u>, 21 Cal. 3d at 319).  Accordingly, defendants argue that plaintiff not only misconstrues the purpose of the equitable tolling doctrine, but also fails to establish fulfillment of the aforementioned elements—namely, timely notice to the defendant, lack of prejudice to the defendant, and reasonable and good faith conduct on the part of the plaintiff.  <u>See</u> Reply at 10-13.

The Court finds that plaintiff's tolling arguments seem more appropriately fashioned as an extension of her arguments relating to equitable estoppel.  However, at this stage in the proceeding, and in light of the Court's denial of summary judgment due to the existence of triable issues of fact regarding equitable estoppel, discussed <u>infra</u>, the Court declines to decide, as a matter of law, whether California's equitable tolling doctrine can or cannot possibly apply to the instant case, in which it is undisputed that the injured party has failed to file a claim of any sort until well past the statute of limitations. The Court notes, however, that in California, "equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine," and, in the words of the California Supreme Court, is "a creature of the judiciary's inherent power" to "formulate rules of procedure where justice demands it."  <u>McDonald</u>, 45 Cal. 4th at 99-100 (citations and quotation marks omitted).  The doctrine is therefore flexible and generally "requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the Tort Claims Act limitations statute." <u>Addison</u>, 21 Cal. 3d at 321.  Thus, despite defendants' assertion that the doctrine was "designed to help plaintiffs who diligently prosecuted their claims," reply at 11, the Court declines to find as a matter of law that the doctrine is inapplicable to instances in which a plaintiff was prevented from timely prosecuting any claim on account of wrongful conduct of the defendant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
| --- | --- | --- | --- |
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

### b.    Equitable Estoppel

Generally speaking, under California law, "four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." Driscoll v. City of Los Angeles, 67 Cal. 2d 297, 305 (1967).  This rule under California law  is "similar to and not inconsistent" with federal law, as both "focus on actions taken by the defendant which prevent the plaintiff from filing on time." Lukovsky, 535 F.3d at 1052.

"It is well settled that a public entity may be estopped from asserting the limitations of the claims statute where its agents or employees have prevented or deterred the filing of a timely claim by some affirmative act."  John R. v. Oakland Unified Sch. Dist., 48 Cal. 3d 438, 445 (1989) (citations omitted).  "Estoppel most commonly results from misleading statements about the need for or advisability of a claim; actual fraud or the intent to mislead is not essential."  Id.  "A fortiori, estoppel may certainly be invoked when there are acts of violence or intimidation that are intended to prevent the filing of a claim."  Id.  Defendants argue that there is "no evidence" that Valenzuela, Nichols, or City personnel "engaged in any affirmative act to prevent or deter the filing of a timely claim," and therefore, equitable estoppel does not apply to relieve McMahon from the statutory requirement that she submit a timely Tort Claim as a condition precedent to suing defendants.  Mot. Summ. J. at 11-12.  More specifically, defendants assert that neither the named defendant officers nor any City personnel ever threatened McMahon with "any harm or violence to dissuade her from filing a timely claim," nor did they ever "tell her not to file a timely claim or not to retain a lawyer to file a civil lawsuit."  Id. at 11; 14-15.  Of course, the arguments defendants advance in their motion were made without reference to the declaration of Tara McMahon, which plaintiff submitted in conjunction with her opposition to the instant motion.  Plaintiff relies on this declaration, as well as myriad other evidence submitted along with her opposition, in refuting defendants' arguments in the instant motion.  Specifically, McMahon contends that she was prevented from filing a timely claim on account of (1) her fear of retaliation from the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

officers due to what she perceived as their threatening conduct through at least early 2011, and (2) her belief that she should not contact a lawyer due to statements from LAPD personnel from early 2011 through late 2013, roughly four months before she filed her claim with the City. See McMahon Decl. ¶¶ 19-41.  After considering both parties' arguments, the Court concludes, as explained in the discussion below, that there exist triable issues of fact that would bear directly on plaintiff's ability to invoke the equitable estoppel doctrine and, therefore, summary judgment is inappropriate and must be denied.

### i. Alleged Conduct of Officers Valenzuela and Nichols from late 2009 through February 2011

"To create an equitable estoppel, 'it is enough if the party [seeking estoppel] has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss . . . Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense.'" Vu v. Prudential Prop. & Cas. Ins. Co., 26 Cal. 4th 1142, 1152-53 (2001) (citing Benner v. Indus. Acc. Comm'n, 26 Cal. 2d 346, 349 (1945)).  Furthermore, "estoppel may certainly be invoked when there are acts of violence or intimidation that are intended to prevent the filing of a claim." John R., 48 Cal. 3d at 445.  Plaintiff states in her declaration that in "numerous text messages" and "at least one phone call" with Valenzuela following the assault, he "told [her] not to tell anybody about the incident" and stated that she "would be in danger if [she] said anything." McMahon Decl. ¶ 19.  According to her declaration, McMahon also "understood" some of Valenzuela's statements and actions, including his placing "his fingers to his lips [at the Wilcox Station in 2010], as if to say, 'keep quiet,'" to be "threats that Valenzuela and Nichols would retaliate against [her] if [she] told anybody about the assault." McMahon Decl. ¶ 21.  When asked during her deposition whether she perceived any of Officer Valenzuela's statements as a threat, McMahon replied, "Well . . . before he was unzipping his pants, he said, 'You don't want to go to jail, do you?'" Street Decl., Ex. 4 (May 20, 2015 Deposition of Tara McMahon), at 249:2-6; see also id. at 248:2-4 ("I think he said something about that he has a family and stuff, and don't – – not to say anything.").  McMahon's recent statements are consistent with testimony she provided to LAPD sergeants during her January 2011 interview.  See Street Decl., Ex. 16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

(January 20, 2011 Recorded Interview Transcript), 8:11-12 [*** **REDACTED** ***].
57:2-10 [*** **REDACTED** ***].[12]

To the extent defendants dispute whether the officers' alleged threats occurred at all, any such dispute would simply confirm the existence of a triable issue of fact to be resolved at trial. To the extent defendants argue that the officers' alleged actions, as outlined in plaintiff's declaration and testimony, could not reasonably justify her stated fear of retaliation and corresponding avoidance of legal action, this is an issue better determined by a jury, not the Court. See West v. State Farm Fire & Cas. Co., 868 F.2d 348, 350 (9th Cir. 1989) ("[R]easonableness is generally a question of fact for the jury."); Christopher P. v. Mojave Unified Sch. Dist., 19 Cal. App. 4th 165, 170 (1993) ("Estoppel may also be invoked where conduct on behalf of the public entity induces a reasonably prudent person to avoid seeking legal advice or commencing litigation.") (citation omitted)); Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co., 90 Cal App. 4th 335, 346 (2001) (noting reasonableness may only be decided as a matter of law when "reasonable minds could not differ").

In their reply, defendants contend that even assuming *arguendo* that Valenzuela engaged in threatening conduct justifying the application of equitable estoppel, as plaintiff insists, such conduct ceased, at the latest, in February 2011, when McMahon moved to Las Vegas. Reply at 4. Therefore, defendants argue, any alleged threats would have tolled the statute of limitations until only February 2011, leaving McMahon until only August 2011 to file her Tort Claim, and until February 2012 to file an application for leave to present a late claim. Reply at 5; see Cal. Gov't Code §§911.2(a), 911.4(b). This argument fails for at least two reasons.

First, defendants' argument focuses on the conduct of Valenzuela and Nichols in isolation and fails to acknowledge that even if such conduct ended in February 2011, the

---

[12] Defendants object to this statement under Federal Rules of Evidence 402 (lacks relevance), 802 (inadmissable hearsay), 56(e) (lacks foundation), 901(a) (lacks authentication), and 611 (impermissibly vague). Defs.' Evid. Objs. No. 118. For reasons explained supra, defendants' objections are overruled. See supra, n. 6 (overruling objections to this statement).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
| --- | --- | --- | --- |
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

conduct of other City personnel, which began in early 2011 and allegedly continued through late 2013, could also contribute to the applicability of equitable estoppel and further toll the statute of limitations, as discussed in the subsections that follow. Second, and more importantly, defendants seem to assume that the officers' allegedly threatening conduct could only toll the statute of limitations for the purposes of estoppel so long as the officers and McMahon were in the same city. Mot. Summ. J. at 17 ("Plaintiff moved to Las Vegas in February 2011—meaning that any types of intimidation by Officer Valenzuela would have been gone once she moved."). To the extent that the officers' allegedly threatening conduct affected McMahon and justified her failure to file a Tort Claim, the Court declines to conclude, as a matter of law, *how long the effect* of any such threatening conduct might persist and thereby justify the applicability of estoppel. As one California Court of Appeal has explained, "[t]olling" in the context of the equitable estoppel doctrine "refers to suspending or stopping the running of a statute of limitations" and "is analogous to a clock stopping, then restarting. As far as the claims-presentation statutes are concerned, the clock 'stops,' according to [the California Supreme Court's decision in John R. v. Oakland Unified Sch. Dist., 48 Cal. 3d 438 (1989)], during those periods when the . . . affirmative acts [of the party to be estopped] deter the filing of a claim." Ortega v. Pajaro Valley Unified Sch. Dist., 64 Cal. App. 4th 1023, 1047 (1998), as modified on denial of reh'g (July 10, 1998). Crucially, the "clock [only] 'starts' again once *the effects* of those affirmative acts have ceased." Id. (emphasis added). Therefore, so long as a jury could find that the *effect* of the officers' threats persisted—e.g., so long as they reasonably contributed to McMahon's failure to file a claim with the City—the statute of limitations is arguably tolled and the City is precluded from asserting an estoppel defense.[13]

_____

[13] Defendants argue that this case is analogous to Ortega v. Pajaro Valley Unified Sch. Dist., 64 Cal. App. 4th 1023 (1998), in which a California court of appeal held that there was insufficient evidence to find that a school district was equitably estopped from asserting a statute of limitations defense with respect to a child's allegations of sexual molestation involving one of the district's teachers. See Mot. Summ. J. at 15-17. Ortega is inapposite, however, because in that case, the injured party "d[id] not recount any threats made by [the alleged tortfeasor], any admonitions not to tell or any other actions taken by [the alleged tortfeasor] independent of the molestations" themselves. Ortega, 64 Cal. App. 4th at 1055. Rather, the plaintiff in Ortega testified that "she was 'scared to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | | Date | September 24, 2015 |
|---|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | | |

### ii.    Alleged Conduct of LAPD Sergeants During the January 20, 2011 Interview

The parties do not dispute what occurred during McMahon's initial January 20, 2011 interview with three LAPD sergeants. However, the parties disagree over whether what occurred during and as a result of the interview creates a triable issue of material fact. Specifically, plaintiff cites extensively to portions of the interview in which **[*** REDACTED ***]**.[14] Plaintiff contends that a jury could find that the **[*** REDACTED ***]** warrant additional tolling of the statute of limitations and justify

---

death' of [the alleged tortfeasor] during the time he was molesting her." Id. In other words, "[t]he only evidence suggestive of an affirmative act by the District or its agents . . . that might have deterred [the child] from filing a claim or a lawsuit is that [the alleged tortfeasor] made [the child] fearful." Id. There was "no evidence that anyone in the District threatened [the child] or in any way dissuaded her from filing a government claim in the six-month period after she left [her school]," no evidence "that the District had knowledge of the molestations," and no evidence "of any affirmative act by the District in the . . . period [following the child's exiting the school,] in which she could have filed a late claim request, or . . . brought an action." Id. With "no substantial evidence in the record that [the child] filed her government claim within a reasonable period after *any event* justifying an estoppel ceased to operate," the court of appeal found estoppel not to apply. Id. at 1056 (emphasis added). Here, unlike in Ortega, McMahon asserts that she *was* in fact threatened by her alleged tortfeasor, and further argues that additional statements and actions by other City personnel further dissuaded her from filing a timely claim. Thus, Ortega is hardly "instructive and analogous," as defendants contend. Mot. Summ. J. at 15.

[14] Without providing argument or citation to caselaw, defendants lodge blanket objections to these statements and to all others included in this subsection, citing to Federal Rules of Evidence 402 (lacks relevance), 602 (personal knowledge), 802 (inadmissable hearsay), 56(e) (lacks foundation), 901(a) (lacks authentication), and 611 (impermissibly vague). See Defs.' Evid. Objs. Nos. 98, 99, 102, 119, 127-132, 144-145. For reasons explained supra, defendants' objections lack merit and are accordingly **OVERRULED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|----------|--------------------------|------|--------------------|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

application of equitable estoppel.  See Opp'n at 22, 25.  Defendants insist that a review of the relevant testimony makes clear that **[*** REDACTED ***]**.  See Reply at 9; DRS ¶¶ P84-P87.

    The Court has carefully reviewed the transcript of McMahon's January 20, 2011 interview.  Contrary to defendants' assertion that the referenced testimony makes **[*** REDACTED ***]**, the Court concludes that the sergeants' statements are ambiguous at best and that, accordingly, a jury could find that the sergeants' responses were misleading and would have led a reasonable person in McMahon's position to avoid hiring an attorney to assist in handling any civil claim arising from Valenzuela's sexual assault.  For example, **[*** REDACTED ***]**.[15]

_____

    [15] At oral argument, counsel for defendant City of Los Angeles implored the Court to review the videotape of McMahon's January 20, 2011 interview with the LAPD sergeants, which defendants filed conditionally under seal as Exhibit A to the Declaration of Sergeant Mark Cohan.  See Dkt. 44-5.  Defendant City of Los Angeles requested that the Court pay particular attention to the exchange between the sergeants and McMahon in which Sergeant Brandstetter states, inter alia, that McMahon **[*** REDACTED ***]**.  See Street Decl., Ex. 16 (January 20, 2011 Recorded Interview Transcript), at 76:9-78:24.  Counsel for defendant City of Los Angeles argued that upon reviewing the video, it would be unreasonable to conclude that the sergeants were implying that McMahon should delay hiring a civil attorney or filing a civil suit.  Having reviewed the video, with particular attention to those portions highlighted by defendant City of Los Angeles, the Court disagrees.  As an initial matter, the Court notes that it has not concluded that McMahon's contentions regarding the implications of the sergeants' statements were in fact reasonable.  Rather, the Court finds that a jury, if presented with relevant and admissible evidence, could reasonably conclude as much.  Indeed, a review of the video reveals that plaintiff was **[*** REDACTED ***]** throughout much of the interview.  Such evidence of her emotional state during the video only further supports the Court's conclusion that a jury could find that McMahon's stated understanding of the sergeants' statements was reasonable under the circumstances.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

Accordingly, the Court declines to conclude as a matter of law that the sergeants' statements were insufficient to justify the application of equitable estoppel. To the extent any such estoppel *is* warranted, the Court further declines to determine how long the effect of any such estoppel might persist, for reasons explained supra. So long as a jury could find that the effect of the sergeants' potentially misleading statements persisted and reasonably contributed to McMahon's failure to file a claim with the City, the statute of limitations is arguably tolled and the City is precluded from asserting an estoppel defense. See J.P. v. Carlsbad Unified Sch. Dist., 232 Cal. App. 4th 323, 337 (2014) ("Until [the alleged tortfeasor] had been successfully prosecuted, or the prosecution definitively ended, the . . . statements [of the party to be estopped] still had influence over" the party that failed timely to file a claim.); But see Santee v. Santa Clara Cnty. Office of Educ., 220 Cal. App. 3d 702, 716 (Ct. App. 1990) ("There are, however, inherent limitations on an otherwise valid estoppel . . . [For instance,] a plaintiff cannot rely on an estoppel if there is still ample time to take action within the statutory period after the circumstances inducing delay have ceased to operate." (citing John R., 48 Cal. 3d 445-446)).

Viewing the evidence in the light most favorable to plaintiff, as the Court is obligated to do in considering the instant motion, the Court concludes that a jury could find the sergeants' statements sufficiently misleading such that tolling of the statute of limitations, and perhaps equitable estoppel, is warranted. Matsushita, 475 U.S. at 587 ("[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion [for summary judgment]" (citation omitted)). As explained supra, any such tolling for the purposes of estoppel arguably persisted until LAPD was able to [*** **REDACTED** ***].

### iii.    Alleged Conduct of Detective Frus from Late 2011 Through September 2013

Detective Frus was assigned to investigate this case in late 2011 and first contacted McMahon in spring 2012. PS ¶¶ P92-P93; DRS ¶¶ P92-P93. In the instant motion, defendants argue that at no point in time during McMahon's interactions with Detective Frus, which included several telephonic conversations and an in-person meeting, did Frus ever (1) threaten McMahon, (2) insist that McMahon keep quiet about the incident, or (3)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|----------|-------------------------|------|---------------------|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

otherwise say anything to dissuade McMahon from hiring a civil lawyer or filing a Tort Claim. Mot. Summ. J. at 15. In making such assertions, defendants rely in part upon Detective Frus's sworn declaration, submitted with the instant motion, in which Frus states in unequivocal terms that she "never told [plainitff] not to hire an attorney[,] . . . never told [plaintiff] to keep quiet and not to hire a lawyer[,] . . . [and] never told [plaintiff] lawyers won't look out for [her] interests." Frus Decl. ¶ 9. However, Frus's contentions directly contradict those contained in McMahon's declaration, submitted in conjunction with her opposition, and therefore create a triable issue of fact to be determined at trial. As discussed <u>supra</u>, defendants insist that the statements set forth in McMahon's recent declaration contradict her sworn deposition testimony and thus render the declaration a "sham affidavit" submitted only for the purpose of creating triable issues of material fact. Reply at 7-8. However, for reasons discussed more fully <u>supra</u>, the Court declines to strike McMahon's declaration as a "sham," as the statements contained therein do not expressly contradict her prior deposition, despite defendants' contentions to the contrary.

Specifically, in her declaration, McMahon states that she asked Detective Frus in "many of [their] conversations" whether she should get a lawyer, and Detective Frus "always said no." McMahon Decl. ¶ 32. Contrary to Frus's contentions, McMahon insists that Frus did in fact say "lawyers won't look out for [her] interests" and "only want money." <u>Id.</u> In addition, McMahon states that Frus "told [her] not to talk to anybody about the sexual assault, as it could jeopardize the police's investigation of the officers." <u>Id.</u> ¶ 33. McMahon also avers that after she told Frus in September 2013 that she had hired her current lawyers, Frus "yelled" at her and said, "I told you not to hire a lawyer!" Such testimony—as with McMahon's aforementioned testimony regarding the effect of both the officers' alleged threats and the sergeants' statements during the January 2011 interview—would certainly be probative of whether City personnel were, as plaintiff insists, suggesting plaintiff need not hire an attorney so as to avoid a civil lawsuit. If such testimony is found to be credible by the finder of fact, it could contribute to a jury finding that defendants are equitably estopped from asserting a statute of limitations defense through early 2014, when plaintiff first filed her claim.

Accordingly, summary judgment as to whether plaintiff's claim is barred under the statute of limitations is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|----------|--------------------------|------|---------------------|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

**3.     Claims for Aiding and Abetting Sexual Battery and Assault**

Plaintiff's fourth and fifth claims, against both Nichols and the City, are for aiding and abetting assault, and aiding and abetting sexual battery. Compl. ¶¶ 66-75. Defendants contend that these claims fail as a matter of law because Nichols's conduct during the alleged assault does not amount to "aiding and abetting" and, therefore, the City cannot be vicariously liable under California Government Code § 815.2. Mot. Summ. J. at 21-24.

California employs the common law rule for purposes of determining aiding and abetting tort liability. Casey v. U.S. Bank Nat'l Ass'n, 127 Cal.App.4th 1138, 1144 (2005). Under this standard, "[l]iability may be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." Id. (internal quotations and citations omitted). It is undisputed that Nichols held McMahon's dog in the front seat of the car while Valenzuela sexually assaulted McMahon in the backseat. DS ¶¶ 9, 13; PS ¶¶ 9, 13. Although Nichols did not say anything to McMahon during the assault, DS ¶ 13; PS ¶ 13, it is also undisputed that he served as the "lookout" during the assault and did nothing to stop Valenzuela. PS ¶¶ P51-52; DRS ¶¶ P51-52. Defendants assert that Nichols's conduct cannot, as a matter of law, constitute "substantial assistance" to Valenzuela. See Mot. Summ. J. at 21-22. In support of their argument, defendants cite to Austin B. v. Escondido Union School District for the proposition that "*mere knowledge* that a tort is being committed and the failure to prevent it does not constitute aiding and abetting." 149 Cal. App. 4th 860, 879 (2007) (emphasis added) (citing Fiol v. Doellstedt, 50 Cal. App. 4th 1318, 1326 (1996)).

The Court finds defendants' argument unconvincing. Serving as a "lookout" during the commission of a tort is not, as defendants suggest, equivalent to having "mere knowledge" that a tort is being committed. Accordingly, the Court declines to conclude, as a matter of law, that Officer Nichols's conduct—i.e., his service, while on duty, as a "lookout" while his partner sexually assaulted McMahon in their vehicle—cannot constitute "substantial assistance" in accomplishing a tortious result. Defendants'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

argument as to summary judgment on plaintiff's fourth and fifth claims against the City is entirely dependent upon its assertion, now rejected, that plaintiff cannot possibly prevail on these claims as to Officer Nichols, and therefore must also be rejected.  See Mot. Summ. J. at 22-24.

Having determined that defendants' argument lacks merit as to Officer Nichols, the Court **DENIES** both Nichols's and the City's motions for summary judgment as to plaintiff's claims for aiding and abetting assault and sexual battery.

### C.     42 U.S.C. § 1983 Claims

#### 1.     Statute of Limitations and Equitable Estoppel

"For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law."  Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) (citing Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999).  California Civil Procedure Code § 335.1 establishes a two-year statute of limitations for personal injury actions and sets forth the appropriate limitations period for section 1983 claims.  See Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004); Blanas, 393 F.3d at 927.  However, federal law determines when a civil rights claim accrues and, accordingly, when the statute of limitations begins to run in a 1983 action.  Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001).  Under federal law, "a claim accrues when the plaintiff knows or has reason to know of the *injury* which is the basis of the action."  TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999) (emphasis added).

In this case, plaintiff had reason to know of the injury immediately after Officer Valenzuela's alleged sexual assault, which occurred, at the latest, in November 2009.  In light of the Court's conclusion that there are triable issues of fact regarding the applicability of estoppel that prevent granting summary judgment as to plaintiff's state law claims, the Court must do the same with respect to plaintiff's section 1983 claims. The relevant two-year statute of limitations for these section 1983 claims, see Cal. Civ.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:14-cv-02085-CAS(AGRx) | Date | September 24, 2015 |
|----------|--------------------------|------|---------------------|
| Title | TARA MCMAHON V. LUIS VALENZUELA, ET AL. | | |

Proc.§ 335.1, is fully twice as long as that established by California Government Code sections 911.2 and 911.4(a), discussed <u>supra</u>.

Accordingly, the Court **DENIES** defendants' motion for summary judgment as to plaintiff's eighth and ninth claims for violations of 42 U.S.C. § 1983.

## V.     CONCLUSION

There remain many triable issues of fact regarding the alleged actions of Officer Valenzuela, Officer Nichols, and City personnel in the years following the sexual assault. There is a reasonable probability that a jury, having resolved these genuine disputes over material facts, could conclude that equitable estoppel or equitable tolling apply such that plaintiff's ten claims are not time barred.  Therefore, in accordance with the foregoing, defendants' motion for summary judgment is **DENIED**.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |